**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STANLEY R., | ) |
| | ) |
| Plaintiff, | ) No. 20-cv-1192 |
| | ) |
| v. | ) Magistrate Judge Susan E. Cox |
| | ) |
| ANDREW M. SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stanley R.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 21] is GRANTED and the Commissioner's motion for summary judgment [dkt. 27] is DENIED; the Court hereby remands this matter for further proceedings.

**I.      Background**

    **a.     Procedural History**

Plaintiff was born in 1969 and was 46 years old on his alleged disability onset date. [R. 53.] Plaintiff applied for Disability Insurance Benefits on November 23, 2016, alleging a disability onset date of March 30, 2016. [R. 170.] Plaintiff's claims were denied initially and upon reconsideration. [R. 96-100; 103-06.] On March 7, 2019, after an administrative hearing, Administrative Law Judge ("ALJ") Patricia Kendall issued an unfavorable decision. [R. 79-87.] Plaintiff requested Appeals Council review, which was denied on December 16, 2019 [R. 1-4], causing the ALJ's March 7, 2019 decision to constitute the final decision

---

[1]   In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2]   Plaintiff has filed a Memorandum in Support of Summary Remand [dkt. 21], which the Court construes as a motion for summary judgment.

of the Commissioner. 20 C.F.R. §404.981. Plaintiff filed the instant action on February 19, 2020, seeking review of the Commissioner's decision. [Dkt. 1.]

   b.   **Relevant Medical Background**

Plaintiff was diagnosed with rectal cancer via colonoscopy and biopsy in April 2016. [R. 292, 315.] He underwent chemoradiation prior to surgery for resection of his sigmoid colon and creation of an ileostomy in August 2016. [R. 436.] His post-operative course was complicated by a small bowel obstruction and Plaintiff underwent reversal of his ileostomy and resection of his small bowel in September 2016. [R. 449-50.]

Plaintiff continued chemotherapy following his surgeries and his cancer was in remission by January 2018. [R. 852.] However, Plaintiff struggles with frequent bowel movements. Following his surgeries, he suffered from frequent diarrhea, having at least 15 bowel movements per day. [R. 225, 511, 560, 896.] His doctors believed his diarrhea was caused by the partial removal of his colon and the attendant decrease in bile absorption in his intestines. [R. 398.] With treatment, Plaintiff's digestive condition has improved somewhat, but he still reports six to seven bowel movements each day with urgency, especially after eating. [R. 842.]

   c.   **The ALJ's Decision**

On March 7, 2019, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 79-87.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 30, 2016. [R. 81.] At Step Two, the ALJ found that Plaintiff had the severe impairments of colon cancer status post lower intestinal resection, colostomy reversal, radiation, and chemotherapy; and chemically induced polyneuropathy. [R. 81-82.] The ALJ determined that Plaintiff's hypertension and gout were nonsevere impairments. [R. 82.] Although Plaintiff did "not allege a psychiatric impairment," the ALJ also determined that "depression secondary to [Plaintiff's] health condition is not a medically determinable impairment." [*Id.*] At Step Three, the ALJ determined Plaintiff

2

did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 82-83.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he is limited to jobs with frequent handling and fingering; and he must avoid all exposure to use of moving machinery and unprotected heights. [R. 83-86.] The ALJ specifically declined to include any accommodation in the RFC to account for Plaintiff's "alleged incontinence" and frequent bowel movements. [R. 86.]

At Step Four, the ALJ determined Plaintiff was capable of performing his past relevant work as a CAD (computer aided design) technician. [R. 87.] The ALJ made no alternative findings concerning Plaintiff's ability to perform other jobs existing in significant numbers in the national economy. *Id.* Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id.*

## II. Social Security Regulations and Standard of Review

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined

by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

**III. Discussion**

Plaintiff alleges, *inter alia*, that the ALJ's RFC assessment improperly fails to account for Plaintiff's frequent bowel movements. The Court agrees, and remands on this basis.

At the outset, it is important to understand what a severe impairment is: "[a] severe impairment is one that significantly limits an individual's ability to perform basic work activities." *Million v. Astrue*, 260 F. App'x 918, 922 (7th Cir. 2008); *see also*, 20 C.F.R. § 404.1520(c); SSR 16-3P. "A finding that an impairment is severe cannot square with a conclusion that it imposes no limitations. It is axiomatic that a severe impairment imposes limitations, and an impairment that imposes no limitations is not severe." *Desiree B. v. Saul*, 2019 WL 6130814, at *3 (N.D. Ill. Nov. 19, 2019) (citing *Pickens v. Berryhill*, 2019 WL 1219707, at *2 (E.D. Ark. Mar. 15, 2019); *Mullin v. Colvin*, 2016 WL 2865366, at *3 (N.D. Ill. May 17, 2016) (remanding where ALJ found a severe impairment yet imposed no related limitations, failing to adequately explain "how Plaintiff's hand impairments could 'significantly limit' his work abilities in her step two findings and, at the same time, have no impact on his capacity for work in her RFC finding"); *Amy L. v. Saul*, 2019 WL 4600262, at *5 (D. Minn. Sept. 23, 2019) (same)). "If an impairment is considered to be severe, it must be included in the residual functional capacity assessment, and if it is not included, the ALJ's decision is impermissibly internally contradictory." *Desiree B.*, 2019 WL 6130814, at *3 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir.1991); *Givens v. Astrue*, 251 F. App'x 561, 567 (10th Cir. 2007)).

Here, the ALJ found that Plaintiff had the severe impairment of colon cancer status post lower intestinal resection, colostomy reversal, radiation, and chemotherapy. [R. 85.] Yet the ALJ's RFC appears not to allow any accommodation for this severe impairment. It is hard for the Court to see how climbing limitations (*i.e.*, ladders, ropes, scaffolds, ramps, and stairs) or avoidance of moving machinery and unprotected heights would accommodate Plaintiff's "colon cancer status post lower intestinal resection,

4

colostomy reversal, radiation, and chemotherapy," a severe impairment which largely relates to Plaintiff's intestinal problems.[3] Because the ALJ has determined this to be a severe impairment but failed to include any accommodation for it within the RFC, the ALJ's decision is internally contradictory. *Desiree B.*, 2019 WL 6130814, at *3; *Hargis*, 945 F.2d at 1488; *Givens*, 251 F. App'x at 567. This is a basis for remand.

Moreover, the Court finds the ALJ's reasoning to be not well supported as it relates to her decision to include no additional restriction within the RFC as it relates to Plaintiff's incontinence. The ALJ noted that Plaintiff's defecation frequency improved with medications, dropping from 10-15 bowel movements a day in January of 2017 to 6-7 bowel movements a day in August of 2018. [R. 86.] The ALJ found it significant that Plaintiff's 6-7 bowel movements a day "were immediately after eating and did not occur if he did not eat." *Id.* The ALJ ultimately found that Plaintiff's incontinence "is provoked by eating and occurs within 2 to 2.5 hours of eating [to be] fairly predictable and is accommodated by the normal standard break schedule and eating at only certain times." *Id.*

The Court agrees with Plaintiff that this analysis "contradicts the facts and begs reason." [Dkt. 21, p. 6.] While the ALJ's analysis all but prohibits Plaintiff from ingesting any food before or during a workday, Plaintiff has pointed out that eating is not his only trigger. In addition to eating, Plaintiff testified that bowel movements and an upset stomach are side effects of his medications.[4] [R. 31, 35.] Plaintiff would even experience nocturnal awakening related to his bowels about once a week. [R. 840.] However, what seems clear is that the only way for Plaintiff to largely avoid his digestive symptoms is by avoiding eating. [R. 40, 840 (no symptoms as long as he doesn't eat).] For example, if Plaintiff knows he won't have access to a bathroom, he prepares for such an event by not eating for 18 hours prior. [R. 40.] In fact, prior to the 1:00 p.m. Administrative Hearing, Plaintiff refrained from eating anything after 8:00 a.m.

---

[3] Facially, the Court can see how the RFC's limitation to jobs with frequent handling and fingering might accommodate the other severe impairment the ALJ found of chemically induced polyneuropathy.

[4] While the ALJ did acknowledge Plaintiff's testimony regarding these medication side effects earlier in her decision [R. 84], the ALJ failed to account for how this side effect fit into the schema under which she specifically excluded any RFC bathroom accommodation because she found Plaintiff's bowel troubles were provoked by eating and limited to 2 to 2.5 hours after eating [R. 86].

5

the previous day (*i.e.*, 29 hours without food). Plaintiff has lost about forty pounds in the year prior to the Administrative Hearing due to his colon cancer (and, no doubt, the associated lower intestinal resection, colostomy reversal, radiation, chemotherapy, and periods of fasting so as not to soil himself). [R. 20.]

Plaintiff testified that when he does eat, he needs to be near a bathroom at all times in case the sudden urge to use the bathroom strikes. [R. 33.] If he is close enough to a bathroom, he can maintain control long enough to make it to the bathroom. *Id.* This is corroborated by his medical records which show reports of urgency, regardless of whether he denies incontinence. [R. 519, 842, 852.] Moreover, eating upsets his stomach and he has to go to the bathroom several times after eating. [R. 40.] The ALJ even acknowledged at the Administrative Hearing that Plaintiff's diarrhea is exacerbated by eating. [R. 40.] In fact, diarrhea "denotes not merely abnormal looseness of stools but also an increase in the urgency and frequency of defecation" and is defined as "[a]n abnormally frequent discharge of semi-solid or fluid fecal matter from the bowel." *Stedman's Medical Dictionary*, 245010 (diarrhea). Thus, Plaintiff's bowel movements were *inherently* urgent, frequent, and unpredictable. While it may be "predictable" that Plaintiff's stomach will become upset and he will suffer fecal urgency within two-and-a-half hours of eating, that in no way suggests the timing or frequency of Plaintiff's need for bathroom breaks following a meal is predictable. The only way for Plaintiff to "predict" his bathroom schedule is to avoid eating entirely [R. 40, 840], which is not sustainable. In light of this evidence, the Court is unwilling to walk the razor-thin logical bridge the ALJ created for not including a bathroom accommodation in the RFC.

Not only did the ALJ fail to include any bathroom accommodation in Plaintiff's RFC, there is a dearth of evidence that a structured bathroom break limitation could even accommodate Plaintiff's needs. Regardless of whether Plaintiff suffers urgency as opposed to incontinence, whether his urgency is improved by long periods of fasting, or whether he knows he will suffer from urgency after eating, there is no evidence contradicting the fact Plaintiff still suffers from unpredictable and uncontrollable urges to

6

defecate every day for unknown periods of time. The vocational expert ("VE") testified that that regardless of how much leeway an employer allows, an employee in the jobs he cited would still only be allowed to fall off task for at most six minutes each hour, outside of the normal break schedule. [R. 50-51.] It appears Plaintiff's logic is correct, therefore, that "even if [Plaintiff's] urgency was only triggered by eating, and even if he skipped breakfast and only ate lunch, he would still be off task far too often during the afternoon [*i.e.*, 6-7 defecation bathroom breaks after lunch] to maintain employment." [Dkt. 21, p. 7.] *See Leo v. Comm'r of Soc. Sec.*, 2019 WL 4508937, at *6-7 (W.D.N.Y. Sept. 19, 2019) (remand based on lack of evidence a structured bathroom-break limitation or scheduled breaks/mealtimes in the RFC could accommodate frequent need to use the bathroom (*i.e.*, 4x after eating) accompanied by unpredictability and urgency.)

Additionally, in *Sikorski v. Berryhill*, the Seventh Circuit has held it an error where an ALJ fails to make a finding regarding the required length or frequency of bathroom breaks in cases where that may affect the claimant's ability to maintain full time work. 690 Fed. App'x 429, 433 (7th Cir. 2017). The ALJ made no such specific finding here, determining instead that Plaintiff's need for bathroom breaks could be "accommodated by the normal standard break schedule and eating at only certain times." [R. 86.] Here, the ALJ certainly thought there was at least a question whether Plaintiff's need for multiple bathroom breaks could affect his ability to maintain full time work when the ALJ asked the VE whether there was "any leeway for extra bathroom breaks during the day." [R. 49.] *See Gregory W. v. Saul*, 2020 WL 4816075, at *5 (N.D. Ill. Aug. 18, 2020) (collecting cases for proposition that ALJ does consider a particular limitation specifically because ALJ asks VE to consider that limitation in rendering opinions). While the VE answered that "[i]t's a bit job specific" as to any given role's tolerance for off-task bathroom time, the VE also made it clear that ten percent of the workday is the maximum tolerance for off-task behavior in general.[5] [R49.] Just like in *Sikorski*, the ALJ here made no finding regarding the required

---

[5] There is case law suggesting that when faced with this evidence, ALJ should have followed-up with Plaintiff's treating providers or ordered additional consultative examinations to obtain their opinions as to the intensity and limiting

7

length or frequency of Plaintiff's bathroom visits; because the Court cannot speculate on facts not contained in the record, it "cannot be confident that the ALJ provided the vocational expert with a 'complete picture' of [Plaintiff's] RFC and, thus, remand is required "so that the ALJ may engage in further factfinding on this matter." *Sikorski*, 690 F. App'x at 433. On remand the ALJ should take care to more fully develop the record to determine whether and, if so, how the specific frequency and duration of Plaintiff's bowel movements would interfere with his ability to work.

In sum, the Court remands this matter both (a) because the ALJ's the ALJ's decision is impermissibly internally contradictory in that it acknowledges a severe impairment yet fails to provide any accommodation for it; and (b) because of the untenable foundations upon which the ALJ built the requisite "logical bridge" upon which she determined no bathroom accommodation would be included in Plaintiff's RFC (including the fact the ALJ failed to fully and fairly develop the record as to the length or frequency of bathroom breaks Plaintiff would require).

**IV. Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. The Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff other than those discussed herein. Plaintiff's motion for summary judgment [dkt. 21] is GRANTED and the Commissioner's motion for summary judgment [dkt. 27] is DENIED.

Entered: June 22, 2021

_____
Susan E. Cox,
United States Magistrate Judge

---

effect of Plaintiff's frequent bowl movements to help the ALJ assess Plaintiff's RFC. *Youness v. Berryhill*, 2018 WL 2716301, at *10 (D. Minn. May 18, 2018), report and recommendation adopted, 2018 WL 2694506 (D. Minn. June 5, 2018) (collecting cases, including those that suggest this proposition for bowel conditions in particular).